ROBERT C. SCHUBERT (S.B.N. 62684)
(rschubert@sjk.law)
NOAH M. SCHUBERT (S.B.N. 278696)
(nschubert@sjk.law)
ALEXANDRA K. GREEN (S.B.N. 333271)
(agreen@sjk.law)
**SCHUBERT JONCKHEER & KOLBE LLP**
Three Embarcadero Center, Suite 1650
San Francisco, California  94111
Telephone:      (415) 788-4220
Facsimile:      (415) 788-0161

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO / OAKLAND DIVISION

|  |  |
|---|---|
| BRIGETTE LOWE, individually and on behalf of all others situated;<br><br>              Plaintiff,<br><br>    v.<br><br>WALGREENS BOOTS ALLIANCE, INC. and WALGREEN CO.,<br><br>          Defendants. | Case No. 3:21-cv-02852-SK<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Upon personal knowledge as to her own acts, and based upon her investigation, the investigation of counsel, and information and belief as to all other matters, Plaintiff Brigette Lowe, on behalf of herself and all others similarly situated, alleges as follows:

**INTRODUCTION**

1. This is a class action brought on behalf of persons who purchased Walgreens Minoxidil Topical Aerosol 5% (Foam), Hair Regrowth Treatment for Women (the "Women's Product" or the "Product") in the State of California.

2. Defendant Walgreens Boots Alliance, Inc. ("WBA") is a holding company that operates as one of the biggest pharmacy store chains in the United States. Defendant Walgreen Co. is a subsidiary of WBA and part of WBA's Retail Pharmacy USA division. WBA and Walgreen Co. are collectively referred to herein as "Walgreens." Walgreens operates over 9,000 drugstores throughout the United States, more than 580 of which are in California. Walgreens' website also allows consumers to purchase general merchandise—including hair regrowth treatment products—online.

3. This lawsuit addresses the conduct of Walgreens for imposing a "pink tax" on functionally identical "women's versions" of hair regrowth treatment products.

4. The pink tax refers to gender-based pricing discrimination, in which products or services marketed to female consumers cost more than those of similar or equal value marketed to male consumers.

5. Numerous studies and articles have found that, women, on a systematic and widespread basis, are charged more than men for comparable products or services.[1] "When a business charges higher prices based on the customer's gender . . . those price disparities constitute discrimination."[2] For instance, a New York study found that across many industries, women pay

---

[1] *See, e.g.*, *From Cradle to Cane: The Cost of Being a Female Consumer, A Study of Gender Pricing in New York City*, New York City Dep't of Consumer Affairs (Dec. 2015), https://www1.nyc.gov/assets/dca/downloads/pdf/partners/Study-of-Gender-Pricing-in-NYC.pdf [hereinafter *From Cradle to Cane*].

[2] *See 'The Pink Tax': How Gender-Based Pricing Discrimination Undermines Women Economic Opportunity and What to Do About It*, Informational Hearing Before the S. Comm. on Judiciary and S. Select Comm. on Women, Work & Families (2020),

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

more than men 42 percent of the time.[3] Specifically, women on average pay 13% more than men for personal care products.[4]

6.      This gender-based price discrimination is an inequitable and unfair practice that disproportionately impacts women. In fact, in 1994, the State of California found that the "pink tax" costs the average women over $1,300 a year and impacts all aspects of daily life.[5] After inflation, this figure is now approximately $2,381 a year.[6]

7.      Due to the effects on women from gender discrimination in pricing, some states, like California and New York, and some local governments, like Miami-Dade County, are starting to enact laws aimed at restricting the pink tax by prohibiting sellers from charging more for goods or services that are substantially similar yet marketed to different genders.[7] Additionally, in April of 2019, two members of the United States Congress introduced H.R. 2048, the *Pink Tax Repeal Act*, a bipartisan bill aimed at eliminating gender-based discrimination in pricing for products and services.[8] The bill's sponsor stated that "[t]he pink tax is not a one-time injustice. It's an insidious form of institutionalized discrimination that affects women across the country from the cradle to the grave."[9]

8.      Gender discrimination in pricing is only justified when consumer products are specially formulated for a specific gender, and the men's and women's versions of the products are not functionally equivalent.

9.      Walgreens distributes its own brand of hair regrowth treatment products under the "Walgreens" label, including the Women's Product and Walgreens Minoxidil Topical Aerosol 5%

---

https://sjud.senate.ca.gov/sites/sjud.senate.ca.gov/files/2.18.2020_sjud_gender_pricing_info_hearing_background_paper.pdf [hereinafter *Informational Hearing*].
[3] *From Cradle to Cane*, *supra*, at 5.
[4] *Id.*
[5] *Id.* at 6.
[6] *See Informational Hearing*, *supra*, at 2.
[7] *See* U.S. GOV'T ACCOUNTABILITY OFF., GAO-18-500, GENDER-RELATED PRICE DIFFERENCES FOR GOODS AND SERVICES 27 (2018)
[8] Pink Tax Repeal Act, H.R. 2048 116th Cong. (2019).
[9] *Reps Speier & Reed Reintroduce Pink Tax Repeal Act to End Gender-Based Pricing Discrimination*, Press Releases, CONGRESSWOMAN JACKIE SPEIER (Apr. 3, 2019), https://speier.house.gov/2019/4/reps-speier-reed-reintroduce-pink-tax-repeal-act-end-gender-based.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

(Foam), Hair Regrowth Treatment for Men (the "Men's Product"). The Women's Product and Men's Product are collectively hereinafter referred to as the "Products."

10.     Minoxidil, the active ingredient in the Products, is a U.S. Food and Drug Administration ("FDA")-approved over-the-counter topical medication for androgenetic alopecia marketed and sold to both men and women. In 2015, approximately 50 million men and 30 million women in the United States had androgenetic alopecia. Minoxidil stimulates hair growth and is available in liquid or foam, and in two strengths—2% and 5%. "Minoxidil is available as a 5% solution to be applied twice daily for men, 2% solution applied twice daily for women, and 5% foam applied twice daily for men (FDA approved in 2006) and once daily for women (FDA approved in 2014)."[10]

11.     As alleged herein, Walgreens participated in gender-based pricing discrimination through its packaging and labeling of the Women's Product and Men's Product. Walgreens' advertisements, marketing representations, and labeling of the Products are misleading, untrue, and likely to deceive reasonable consumers. Walgreens designs its packaging to mislead consumers into thinking that the Women's Product is unique or specially formulated to make it specifically appropriate for women as opposed to men.

12.     As alleged herein, this practice also violates California's Unruh Civil Rights Act (the "Unruh Act"), which prohibits businesses from participating in pricing discrimination towards consumers based upon, *inter alia*, their sex or gender. These unfair and unlawful business practices result in women paying substantially higher prices for goods, like the Women's Product, than those made available to men.

13.     Despite their distinct packaging, the Women's Product and the Men's Product contain the same active ingredient and formulation of minoxidil 5%. Even though there is no difference in the formulation between the Products, Walgreens markets and sells the Women's Product to consumers at a substantially higher price than the Men's Product. As of March 25, 2021, the

---

[10] Mackenzie R. Wehner, Kevin T. Nead, & Jules B. Lipoff, *Association Between Gender and Drug Cost for Over-the-Counter Minoxidil*, JAMA DERMATOLOGY, Aug. 2017, at 825, https://jamanetwork.com/journals/jamadermatology/fullarticle/2629702?utm_campaign=articlePDF&utm_medium=articlePDFlink&utm_source=articlePDF&utm_content=jamadermatol.2017.1394 [hereinafter Lipoff Study].

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Women's Product costs nearly *1.5 times* as much per ounce than the Men's Product on Walgreens' website.

14.     Yet, there is no reason for this dramatic price differential, as both Products are identical. No reasonable consumer would pay approximately *1.5 times* more for the Women's Product, as compared to the Men's Product, unless she was deceived into thinking that women cannot safely use the Men's Product.

15.     Plaintiff herein seek relief under the laws of California.

## PARTIES

16.     At all relevant times, Plaintiff Lowe has resided in Vallejo, California and purchased the Women's Product near her residence. Plaintiff Lowe purchased one box of the Women's Product at the end of 2019. In deciding to purchase the Women's Product, Plaintiff Lowe saw and relied upon the Product's packaging and labeling. Specifically, Plaintiff Lowe relied on the fact that the Product's packaging stated, "***Foam For Women***." Walgreens' packaging and labeling were material and an important factor to Plaintiff Lowe in deciding whether to purchase the Women's Product. Plaintiff Lowe purchased the Women's Product because she believed that the Product was specially formulated or unique for women based on the packaging and labeling of the Product. As a result, Plaintiff Lowe believed that the Product was different from the Men's Product. Plaintiff Lowe purchased and paid substantially more for the Women's Product than she would have if she had known the truth about the Product. Plaintiff Lowe has suffered actual damages in the form of her overpayment for the Product, which she purchased as a result of Walgreens' misrepresentations. Walgreens did not inform Plaintiff Lowe of the true formulation of the Product. Had Plaintiff Lowe known that the Product was no different than the Men's Product, she would either not have purchased the Product or would have paid substantially less for it. At present, Plaintiff Lowe has concerns about purchasing the Product for herself as she remains unsure as to whether the labeling of the Product is, and will continue to be, false and misleading. In the future, Plaintiff Lowe would be willing to pay a premium for the Women's Product if the product was in fact specially formulated or unique for women.

17. Defendant WBA is a Delaware corporation with its principal place of business at 108 Wilmot Road, Deerfield, Illinois 60015. WBA is a global leader in retail and wholesale pharmacy, and is the parent company of Walgreen Co. As described in WBA's 10-K, WBA became the successor of Walgreen Co. pursuant to a merger to effect a reorganization of Walgreen Co. into a holding company structure on December 31, 2014.[11]

18. Defendant Walgreen Co. is an Illinois corporation with its principal place of business at 200 Wilmot Road, Deerfield, Illinois 60015, and is a subsidiary of WBA. Walgreen Co. sells prescription and non-prescription drugs, as well as general merchandise. Walgreen Co. has a portfolio of at least fifteen store brands, which are privately labeled, including Walgreens Minoxidil Topical Aerosol 5% (Foam), Hair Regrowth Treatment for Women.[12]

**JURISDICTION AND VENUE**

19. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one class member is a citizen of a state other than that of Walgreens, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

20. This Court has personal jurisdiction over Walgreens pursuant to 18 U.S.C. § 1965(a) because Walgreens was engaged in the manufacturing, labeling, packaging, marketing, and sale of the Women's Product in the State of California.

21. This Court has personal jurisdiction over the Plaintiff because Plaintiff submits to the Court's jurisdiction.

22. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the violations of law occurred in this county. This includes the transaction at issue—Plaintiff's purchase of the Women's Product.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

---

[11] https://www.sec.gov/ix?doc=/Archives/edgar/data/0001618921/000161892120000082/wba-20200831.htm#iba836ebfa5444d52b8692eb0c769568a_13.

[12] https://www.modernretail.co/retailers/walgreens-is-revamping-its-private-label-category-to-make-it-more-competitive/.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

## INTRADISTRICT ASSIGNMENT

23.     Plaintiff purchased the Women's Product at a Walgreens location in the County of Contra Costa. As such, this action may be properly assigned to the San Francisco/Oakland division of this Court pursuant to Civil Local Rule 3-2(d).

## FACTUAL ALLEGATIONS

24.     Walgreens manufactures, distributes, and sells the Women's Product and Men's Product at issue herein.

25.     Walgreen sells the Women's Product and Men's Product directly to consumers.

26.     The active ingredient in the Products is minoxidil, which can promote hair growth by increasing the density and thickness of hair, and is found in many hair regrowth treatment products.[13] Today, consumers can find minoxidil both in 2 percent and 5 percent formulations, as well as in both liquid and foam formulations.[14]

27.     According to a study titled "Association Between Gender and Drug Cost for Over-the-Counter Minoxidil," women on average pay 40 percent more than men for minoxidil foams for hair loss treatment.[15] This report found that even though the men's and women's versions of the foam formulas contain the same active ingredient and inactive ingredients, substantial price differences exist. This study illustrates an example of the "pink tax" and that women are paying more for identical hair regrowth treatment products, like Walgreens' Women's Product.

28.     Based on the findings in this study, Dr. Jules Lipoff, lead study author, stated: "I think any dermatologist treating alopecia who wants to prescribe or recommend minoxidil to female patients should recommend to women to use the 'for men' product. I believe it is important on a global scale to be aware of how much things cost, and how these costs may affect different groups of people differently."[16]

---

[13] See Rebecca Dancer, *Minoxidil (Rogaine) for Hair Growth: The Complete Guide*, BYRDIE (Mar. 8, 2021), https://www.byrdie.com/minoxidil-for-hair-growth-4769934#what-is-minoxidil.
[14] *Id.*
[15] Lipoff Study, *supra*, at 825.
[16] *The pink tax*, DERMATOLOGYTIMES (Aug. 31, 2017), https://www.dermatologytimes.com/view/pink-tax.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

29.     Walgreens' Women's Product and Men's Product have the same active and inactive ingredients. The Products are interchangeable, and they are therefore equally suitable for women and men, adjusting the amount of medication based only on gender.

30.     Walgreens has been engaging in the unfair, unlawful, and deceptive practice of manufacturing, marketing, and selling its privately labeled hair regrowth treatment as two unique products, such that women mistakenly believe that they must purchase the more expensive Women's Product.

31.     The front of the box of the Women's Product includes the following statements, among others:[17]

    a.   "FOAM FOR WOMEN"

    b.   "Compare to Women's Rogaine® active ingredient"

32.     The Walgreen's Women's Product is marketed towards females and has a more "feminine" packaging. As seen below, the Women's Product comes in a purple box, while the Men's Product comes in a blue box. Walgreens also distinguishes the two products by referring to one as "Foam For Women" in purple lettering and one "For Men" in blue lettering.

 

---

[17] *See* https://www.walgreens.com/store/c/walgreens-hair-regrowth-treatment-for-women,-minoxidil-topical-aerosol,-5-foam/ID=prod6392369-product.

**First Amended Class Action Complaint**          7
**Case No. 3:21-cv-02852-SK**

33.     Additionally, Walgreens positions its Products alongside brand-name hair regrowth treatment products, such as Women's Rogaine, which is also purportedly formulated exclusively and specifically for women. As displayed on the Products' packaging, Walgreens also explicitly compares the Women's Product to the Women's Rogaine and the Men's Product to the Men's Rogaine.

34.     Yet, the packaging of the Women's Product does not state that it contains the same formulation as compared to the Men's Product. Walgreens' representations on the packaging of the Women's Product were material and an important factor to Plaintiff and the putative Class in deciding whether to purchase the Women's Product.

35.     As seen with similar "Pink Taxed" items sold throughout the United States, Walgreens has a corresponding, male-marketed product that is materially identical to the Women's Product. Walgreens' Men's Product leads a reasonable consumer to believe that the product consists of a formulation that is specific for men, as opposed to women. The front of the box of the Men's Product includes the following statements, among others:

   a.   "FOR MEN"

   b.   "Compare to Men's Rogaine® active ingredient"

   c.   "NOT FOR USE BY WOMEN"

36.     Walgreens misleads consumers by placing "NOT FOR USE BY WOMEN" on the Men's Product in distinctive capitalized and bold lettering.  Due to the inclusion of "NOT FOR USE BY WOMEN" on the front of the Men's Product, reasonable consumers believe that a product specifically labeled with this disclaimer is just for men.[18]

37.     Similar to the packaging of the Women's Product, the Men's Product does not state that the formulations of the two hair regrowth treatment products are entirely identical. Rather, the Men's Product does the opposite and states that the Men's Product is "Not For Use By Women." However, the Products contain the same active ingredient and formulation.

---

[18] On the back of the Men's Product packaging, the "Warnings" section also states, "Do not use if you are a woman."

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

38.     On both the back of the Women's Product and the Men's Product packaging, the same ingredients are listed:

a.     Active Ingredient: Minoxidil 5% w/w (without propellant)

b.     Inactive Ingredients: Butane, Butylated Hydroxytoluene, Cetyl Alcohol, Citric Acid, Dehydrated Alcohol, Isobutane, Lactic Acid, Polysorbate 60, Propone, Purified Water, Stearyl Alcohol

39.     As a comparison of the ingredients reveals, the Women's Product contains every single ingredient included in the Men's Product.

40.     However, a consumer would not likely know it was possible or even safe to compare the Women's Product with the Men's Product, and such a comparison is not required for reasonable consumers to be deceived by the packaging for the Women's Product.

41.     The back of the Women's Product packaging also includes the following statement, among others: "apply half a capful **once daily** directly to the scalp in the hair loss area."

42.     The back of the Men's Product packaging includes the following statement, among others: "apply half a capful 2 times a day to the scalp in the hair loss area."

43.     As described in the Lipoff study above, even though "women use minoxidil foam once daily compared with twice daily for men, the group of people (women) who require the same medication less often are paying more for each dose."[19]

44.     The difference in instructions does not justify the inflated price at which the Women's Product is sold in comparison to the Men's Product. These instructions do not, in any manner, cure Walgreens' gender-discriminatory pricing of the Women's Product from being an unfair and deceptive practice.

45.     Nonetheless, Walgreens charges its customers significantly more for the Women's Product than they charge customers for the Men's Product. As of March 25, 2021, the Women's Product retails for $9.48 per ounce,[20] while the Men's Product retails for $6.16 per ounce.[21]

---

[19] Lipoff Study, *supra*, at 826.

[20] *See* https://www.walgreens.com/store/c/walgreens-hair-regrowth-treatment-for-women,-minoxidil-topical-aerosol,-5-foam/ID=prod6392369-product.

[21] *See* https://www.walgreens.com/store/c/walgreens-minoxidil-topical-aerosol-5-(foam),-hair-regrowth-treatment-for-men/ID=prod6103492-product.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Accordingly, the Product costs ***more than 50%*** as much per ounce than the Men's Product despite the identical formulations.

46.     Walgreens understands that these misrepresentations and omissions would be important to a reasonable consumer in deciding whether to purchase the Women's Product rather than the Men's Product.

47.     Walgreens' deceptive and misleading marketing and packaging of the Products caused consumers, including Plaintiff, to rely on Walgreens' representations that the Products were two unique formulations. Additionally, consumers, including Plaintiff, purchased and overpaid for the Women's Product when the Men's Product contains the same active and inactive ingredients.

48.     Walgreens' misrepresentations of the material facts detailed above constitute unfair, unlawful and deceptive practices. Walgreens has and continues to have reasonable available alternatives to further Walgreens' legitimate business interests, other than the conduct described herein.

## EQUITABLE RELIEF

49.     Plaintiff Lowe sets forth alternate claims for legal damages under the CLRA and equitable relief (restitution and injunctive relief) under the FAL, UCL, CLRA, and Unruh Act.

50.     Plaintiff Lowe, the California Class, and the California Subclass do not have an adequate remedy at law with respect to future harm caused by Walgreens' conduct as alleged herein.

51.     Absent an equitable injunction enjoining Walgreens' conduct alleged herein, Plaintiff Lowe, Class members, and the public will be irreparably harmed and denied an effective and complete remedy because they face a real and tangible threat of future harm emanating from Walgreens' ongoing conduct which cannot be remedied with monetary damages.

52.     Plaintiff Lowe does not know at this juncture whether Plaintiff's CLRA claim will survive through trial, whether the Court will accept a model for legal damages for past harm that Plaintiff Lowe will proffer in the future at the appropriate time, or whether the Court will find that any such damages model adequately compensates Plaintiff's and the Class' past losses.

53.     Moreover, Plaintiff Lowe continues to have use for minoxidil hair regrowth treatment products. If the Court were to grant an injunction enjoining Walgreens from making the

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

misrepresentations described above, Plaintiff Lowe would want to purchase the Women's Product in the future. Without an injunction, Plaintiff Lowe would be unable to trust Walgreens' representations and would not purchase the Women's Product.

## TOLLING

### A.  Discovery Rule Tolling

54.     For the following reasons, any otherwise-applicable statutes of limitation have been tolled by the discovery rule with respect to all claims.

55.     Through the exercise of reasonable diligence, and within any applicable statutes of limitation, Plaintiff and the other Class Members could not have discovered that Walgreens was concealing its true practices.

56.     Plaintiff and the other Class Members had no way of knowing about Walgreens' deceptive practices with respect to the marketing of the Women's Product and the Men's Product. Walgreens' marketing of the Products makes clear that it tried to hide the true facts that there is no formulation difference between the Products despite the premium markup for its Women's Product.

### B.  Fraudulent Concealment Tolling

57.     Throughout the relevant time period, applicable statutes of limitation have been tolled by Walgreens' knowing and active fraudulent concealment and denial of the facts alleged in this Class Action Complaint.

58.     Instead of disclosing its true practices, Walgreens falsely represented that there was a meaningful difference between its Women's Product and Men's Product. Walgreens also falsely represented that the Men's Product should not be used by women by placing "NOT FOR USE BY WOMEN" on the front of the Men's Product. Yet, the Women's Product has the same active ingredient and formulation as the Men's Product.

### C.  Estoppel

59.     Walgreens was under a continuous duty to disclose to Plaintiff and the other Class Members the true character, quality, and nature of its minoxidil products, including the Women's Product and the Men's Product.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

60.     Although Walgreens had a duty throughout the relevant period to disclose to Plaintiff and the other Class Members that they had engaged in the deception described in this Class Action Complaint, Walgreens knowingly, affirmatively, and actively concealed true facts from consumers.

61.     Based on the foregoing, Walgreens is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

62.     Plaintiff Lowe brings this action pursuant to Federal Rule of Civil Procedure 23(a) on behalf of herself and the proposed Class defined as follows:

> All persons who purchased Walgreens Minoxidil Topical Aerosol 5% (Foam), Hair Regrowth Treatment for Women in the State of California (the "California Class").

63.     Within the California Class, there is one subclass for purposes of Plaintiff Lowe's claims under the Consumer Legal Remedies Act (the "California Subclass"). The proposed California Subclass is defined as follows:

> All persons who purchased Walgreens Minoxidil Topical Aerosol 5% (Foam), Hair Regrowth Treatment for Women for personal, family, or household purposes in the State of California.

64.     Excluded from the California Class and California Subclass are governmental entities, Walgreens, any entity in which Walgreens has a controlling interest, and Walgreens' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the California Class and California Subclass are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff. This action is brought and may be properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

65.     ***Numerosity Under Rule 23(a)(1).*** The California Class and California Subclass are so numerous that the individual joinder of all members is impracticable, and the disposition of the

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

claims of all Class and Subclass Members in a single action will provide substantial benefits to the parties and the Court. Although the precise number of members of the California Class and California Subclass are unknown to Plaintiff at this time, on information and belief, the proposed Class and Subclass contains thousands of purchasers of the Women's Product who have been damaged by Walgreens' conduct as alleged herein. Discovery will reveal, through Defendant's records, the approximate number of the California Class and California Subclass members.

66.   ***Commonality Under Rule 23(a)(2).*** Common legal and factual questions exist that predominate over any questions affecting only individual members. These common questions, which do not vary among the California Class and California Subclass members and which may be determined without reference to any California Class member's and California Subclass member's individual circumstances, include, but are not limited to:

   a)   Whether the Women's Product and Men's Product are the same;

   b)   Whether Walgreens participated in gender pricing discrimination;

   c)   Whether Walgreens' conduct violates the Unruh Act;

   d)   Whether Walgreens knew or should have known that the Women's Product and Men's Product are the same;

   e)   Whether Walgreens' conduct and/or omissions in its marketing, labeling, and selling of the Women's Product in the manner alleged herein indicated to the Plaintiff and the other California Class and California Subclass members that the Women's Product was specially formulated or unique for women as compared to the Men's Product;

   f)   Whether Defendant's representations and omissions are material to reasonable consumers;

   g)   Whether Walgreens' labeling, marketing, and the sale of Women's Product are false, deceptive, and misleading;

   h)   Whether Walgreens' marketing, advertising, labeling, and packaging of the Women's Product is likely to deceive reasonable consumers;

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

i)  Whether Walgreens' marketing, advertising, labeling, and packaging of the Women's Product caused Plaintiff and the California Class and California Subclass to suffer economic harm;

j)  Whether Plaintiff and members of the California Class are entitled to statutory damages under the Unruh Act;

k)  Whether Plaintiff and members of the California Class and California Subclass have been damaged by the wrongs alleged herein and are entitled to compensatory or punitive damages; and,

l)  Whether Plaintiff and members of the California Class and California Subclass are entitled to injunctive or other equitable relief, including restitution.

67.  ***Typicality Under Rule 23(a)(3).*** Plaintiff's claims are typical of the California Class and California Subclass members' claims. Walgreens' course of conduct caused Plaintiff and members of the California Class and California Subclass the same harm, damages, and losses as a result of Walgreens' uniformly unlawful conduct. Likewise, Plaintiff and other California Class and California Subclass members must prove the same facts in order to establish the same claims.

68.  ***Adequacy of Representation Under Rule 23(a)(4).*** Plaintiff is an adequate representative of the California Class and California Subclass because she is a member of the California Class and California Subclass, and her interests do not conflict with the interests of the California Class or California Subclass. Plaintiff has retained counsel competent and experienced in complex litigation and consumer protection class action matters such as this action, and Plaintiff and their counsel intend to vigorously prosecute this action for the California Class's and California Subclass's benefit and has the resources to do so. Plaintiff and her counsel have no interests adverse to those of the other members of the California Class and California Subclass.

69.  ***Superiority.*** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of each Class and Subclass member' claim is impracticable. The damages, harm, and losses suffered by the individual members of the California Class and California Subclass will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Walgreens' wrongful conduct.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Even if each California Class and California Subclass member could afford individual litigation, the Court system could not. It would be unduly burdensome if thousands of individual cases proceeded. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those individuals with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the Courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

70.     As a result of the foregoing, class treatment is appropriate.

### FIRST CLAIM FOR RELIEF
**Violations of the Unruh Civil Rights Act**
**CAL. CIV. CODE §§  51,** *et seq.*
***On Behalf of Plaintiff Lowe and the California Class***

71.     Plaintiff Lowe, individually and on behalf of the California Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

72.     Plaintiff Lowe brings this claim individually and on behalf of the California Class against Walgreens.

73.     California's Unruh Act provides in pertinent part as follows:

All persons within California "are free and equal, and no matter what their *sex*, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

For purposes of this section ... "'Sex'... includes, but is not limited to, a person's gender. *'Gender' means sex*, and includes a person's gender identity and gender expression."

For purposes of this section . . . "*Sex*, race, color, religion, national origin, disability, medical condition, marital status, or sexual orientation" *includes a perception that the person has any particular characteristic or characteristics within the listed*

---

**First Amended Class Action Complaint**                                    **15**
**Case No. 3:21-cv-02852-SK**

1

*categories or that the person is associated with a person who has, or is perceived to*
*have, any particular characteristic or characteristics within the listed categories.*"

2

3    Cal. Civ. Code §§ 51(b), 51(e)(5), 51(e)(6) (emphasis added).

4

5    74.    Civil Code Section 51. 5 further provides that:

6    No business establishment of any kind whatsoever shall *discriminate against . . . any*
*person in this state on account of any characteristic listed or defined*
*in subdivision (b) or (e) of Section 51*, or of the person's partners, members,
stockholders, directors, officers, managers, superintendents, agents, employees,
business associates, suppliers, or customers, because the person is perceived to have
one of more of those characteristics, or because the person is associated with a person
who has, or is perceived to have any of those characteristics. (Emphasis added).

7

8

9

10    75.    Plaintiff Lowe is a "person" under Cal. Civ. Code § 51.5(b).

11    76.    Walgreens is a "business establishment" within the meaning of Cal. Civ. Code § 51,

12    *et seq*.

13    77.    Walgreens discriminated against Plaintiff because of her sex. By virtue of Walgreens

14    selling and requiring Plaintiff and other members of the California Class to pay a higher price than

15    male consumers were required to pay for the identical Men's Product, Walgreens intentionally made

16    a distinction or discrimination against Plaintiff and other members of the California Class on the

17    basis of their sex as prohibited by the Unruh Act.

18    78.    Plaintiff Lowe purchased the disparately priced Women's Product.

19    79.    Plaintiff Lowe and the other California Class members were substantially harmed by

20    Walgreens' violations of Cal. Civ. Code § 51, *et seq*.

21    80.    Plaintiff Lowe, on behalf of herself and the California Class, brings this action and

22    seeks statutory damages, attorney's fees, injunctive relief, and all other relief permitted under Cal.

23    Civ. Code § 51, et seq.

24

25

26

27

28

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

---

## SECOND CLAIM FOR RELIEF
### Violations of the California False Advertising Law
CAL. BUS. & PROF. CODE § 17500 *et seq.*
*On Behalf of Plaintiff Lowe and the California Class*

81.     Plaintiff Lowe, individually and on behalf of the California Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

82.     Plaintiff Lowe brings this claim individually and on behalf of the California Class against Walgreens.

83.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." CAL. BUS. & PROF. CODE § 17500.

84.     Plaintiff Lowe, individually and on behalf of the California Class, has standing to pursue this claim because she suffered injury in fact and has lost money or property as a result of Walgreens' actions, as described above.

85.      Walgreens engaged in advertising, marketing, labeling, and packaging to the public and offered for sale the Women's Product in California. Walgreens failed and continues to fail in making disclosures, including a statement that the Women's Product has the same active ingredient and formulation as the Men's Product.

86.     Walgreens engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the Women's Product to consumers like Plaintiff Lowe, and members of the California Class.

87.     Walgreens' advertising and marketing representations regarding the Women's Product were false, misleading, and deceptive within the definition, meaning, and construction of California Business & Professions Code §§ 17500, *et seq*. (False Advertising Law).

88.     Walgreens' misrepresentations and omissions alleged herein were the type of misrepresentations that are material, *i.e.*, a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

89.     Walgreens' misrepresentations and omissions alleged herein are objectively material to a reasonable consumer, and therefore reliance upon such misrepresentations may be presumed as a matter of law.

90.     At the time it made the misrepresentations and omissions alleged herein, Walgreens knew or should have known that they were untrue or misleading and acted in violation of California Business and Professions Code §§ 17500, *et seq.*

91.     Unless restrained by this Court, Walgreens will continue to engage in untrue and misleading advertising, as alleged above, in violation of California Business & Professions Code §§ 17500, *et seq.*

92.     As a result of Walgreens' conduct and actions, Plaintiff Lowe and each member of the California Class has been injured, has lost money or property, and is entitled to relief. Plaintiff Lowe seeks disgorgement, restitution, injunctive relief, and all other relief permitted under California Business & Professions Code §§ 17500, *et seq.*

**THIRD CLAIM FOR RELIEF**
**Violations of Consumer Legal Remedies Act**
**CAL. CIV. CODE § 1750 *et seq.***
***On Behalf of Plaintiff Lowe and the California Subclass***

93.     Plaintiff Lowe, individually and on behalf of the California Subclass, incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

94.     Plaintiff Lowe brings this claim individually and on behalf of the California Subclass against Walgreens.

95.     Walgreens is a "person" under Cal. Civ. Code § 1761(c).

96.     Plaintiff Lowe and the California Subclass members are "consumers" as defined by Cal. Civ. Code § 1761(d), who purchased one or more Products. The Consumer Legal Remedies Act ("CLRA") prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale … of goods … to any consumer[.]" CAL. CIV. CODE § 1770(a). Walgreens has engaged in unfair or deceptive acts that violated Cal. Civ. Code § 1750, *et*

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

*seq.*, as described above and below, by representing that the Women's Product had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which it does not have; advertising the Women's Product with the intent not to sell it as advertised; and representing that the subject of a transaction involving the Women's Product has been supplied in accordance with a previous representation when it has not.

97.     In connection with its sale of the Women's Product to Plaintiff Lowe and the California Subclass, Walgreens violated the CLRA by:

a)     Misrepresenting to Plaintiff Lowe, and the California Subclass that the Women's Product was specially formulated or otherwise unique, when in fact, the Women's Product has the same active ingredient and inactive ingredients as the Men's Product, in violation of Cal. Civ. Code §§ 1170(a)(5), (9), and (16);

b)     Misrepresenting to Plaintiff Lowe and the California Subclass that the Women's Product had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they did not have, in violation of Cal. Civ. Code § 1170(a)(5);

c)     Advertising goods to Plaintiff Lowe and the California Subclass with the intent not to sell them as advertised, in violation of Cal. Civ. Code §§ 1170(a)(9); and

d)     Misrepresenting to Plaintiff Lowe and the California Subclass that the subject of a transaction had been supplied in accordance with a previous representation when it had not, in violation of Cal. Civ. Code §§ 1170(a)(16).

98.     In addition, under California law, a duty to disclose arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

99.     Walgreens had a duty to disclose to Plaintiff Lowe and the California Class that the Women's Product is identical to the Men's Product for the following three independent reasons: (a) Walgreens had exclusive knowledge of the information at the time of sale; (b) Walgreens actively concealed from Plaintiff Lowe and the California Subclass that both the Women's Product and Men's Product contain the same formulation; and (c) Walgreens made partial representations to Plaintiff Lowe and the California Subclass regarding the formulation of the Women's Product.

100.    Walgreens violated the CLRA by selling the Women's Product, while concealing that the formulations of the Women's Product and the Men's Product are identical from Plaintiff Lowe and the California Subclass.

101.    Walgreens' misrepresentations and omissions in violation of the CLRA were likely to mislead an ordinary consumer. Plaintiff Lowe and the California Subclass reasonably understood Walgreens' representations and omissions to mean that the Women's Product was specially formulated or unique for women.

102.    Walgreens' misrepresentations and omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

103.    Plaintiff Lowe and the California Subclass relied to their detriment on Walgreens' misrepresentations and omissions in the purchasing of the Women's Product.

104.    Plaintiff Lowe, on behalf of herself and the California Subclass, demands judgment against Walgreens under the CLRA for injunctive relief.

105.    Pursuant to Cal. Civ. Code § 1782(a), Plaintiff Lowe served Walgreens with notice of its alleged violations of the CLRA by certified mail return receipt requested on May 10, 2021. Because Walgreens failed to remedy its unlawful conduct within the requisite time period, Plaintiff Lowe and the California Subclass seek all compensatory damages and relief to which they are entitled.

106.    In light of Walgreens' oppression, fraud, and malice, Plaintiff Lowe, on behalf of themselves and the California Subclass, also seek punitive damages under Cal. Civ. Code § 3294 in an amount to be proven at trial.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

107.    Plaintiff Lowe, on behalf of herself and the California Subclass, further seeks an order enjoining Walgreens' unfair or deceptive acts or practices, restitution, compensatory and punitive damages, costs of court, attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

**FOURTH CLAIM FOR RELIEF**
**Violations of the California Unfair Competition Law**
**CAL. BUS. & PROF. CODE § 17200 *et seq.***
***On Behalf of Plaintiff Lowe and the California Class***

108.    Plaintiff Lowe, individually and on behalf of the California Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

109.    Plaintiff Lowe brings this claim individually and on behalf of the California Class against Walgreens.

110.    Plaintiff Lowe has standing to pursue this claim because she has suffered injury in fact and has lost money or property as a result of Walgreens' actions as described above. All California Class Members overpaid for the Women's Product due to Walgreens' concealment that the Women's Product and Men's Product contain the same active ingredient and inactive ingredients.

111.    Walgreens' actions as alleged herein constitute an "unlawful" practice within the definition, meaning, and construction of California's UCL because Walgreens violated California's False Advertising Law (Bus. & Prof. Code §§ 17500, *et seq.*), the CLRA (Civ. Code §§ 1750, *et seq.*), and the Unruh Act (Civ. Code §§ 51, *et seq.*).

112.    Walgreens' actions as alleged herein constitute a "fraudulent" practice because by representing that the Women's Product was specially formulated for women, but concealing that the Women's Product contains the same active ingredient and formulation as the Men's Product, Walgreens' conduct was likely to deceive consumers. Additionally, Walgreens' actions constitute fraud because Walgreens represented that the Men's Product was not suitable for use by women by placing "NOT FOR USE BY WOMEN" on the front of the Men's Product. However, the Products contain the same active ingredient and formulation. Walgreens' representations about the Women's

Product were false and misleading, and its failure to disclose these facts also constitutes a material omission in violation of the UCL.

113.    Walgreens' actions as alleged herein constitute an "unfair" practice because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to Walgreens' customers. The harm caused by Walgreens' wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to Plaintiff Lowe and the California Class. Walgreens could and should have chosen one of many reasonable available alternatives, including disclosing that the Women's Product is not specially formulated or unique for women, that the Men's Product is the same product as the Women's Product, that the Men's Product is safe and suitable for women when used in the proper amount, and charging the same amount per ounce for the Women's Product and the Men's Product. Additionally, Walgreens' conduct was "unfair" because it violated the legislatively declared policies reflected by California's strong consumer protection and false advertising laws, including, the CLRA, Cal. Civ. Code §§ 1750 *et seq.*, the FAL, Cal. Bus. & Prof. Code §§ 17500 *et seq*, and the Unruh Act Cal. Civ. Code §§ 51, *et seq*.

114.    As a result of Walgreens' unlawful, fraudulent, and unfair conduct, Plaintiff Lowe and the California Class received an overpriced product to that which they were promised. Had Walgreens disclosed that the Women's Product and Men's Product were identical, Plaintiff Lowe and the California Class would not have purchased the Women's Product or would have paid substantially less for it.

115.    Walgreens' wrongful business practices constitute a continuing course of unfair competition because Walgreens continues to represent that the Women's Product is specially formulated and unique from the Men's Product. Plaintiff Lowe and the California Class therefore seek equitable relief to remedy Walgreens' deceptive marketing, advertising, and packaging. Because Walgreens continues to engage in unlawful, unfair, and fraudulent conduct concerning the Women's Product, Plaintiff and the California Class lack any adequate remedy at law.

116.    Plaintiff Lowe and the California Class also seek an order requiring Walgreens to make full restitution of all monies that it has wrongfully obtained from California Class members, as well as all other relief permitted under the UCL.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and on behalf of the members of the California Class and California Subclass defined herein, requests that the Court order the following relief and enter judgment against Walgreens as follows:

A.  an Order certifying that the action may be maintained as a Class Action and that Plaintiff be appointed as Class Representative and their undersigned counsel as Class Counsel;

B.  a declaration that Walgreens engaged in the illegal conduct alleged herein;

C.  an Order enjoining Walgreens from pursuing the policies, acts, and practices complained of herein;

D.  a Judgment awarding Plaintiff, the California Class, and the California Subclass restitution and disgorgement of all compensation obtained by Walgreens from its wrongful conduct;

E.  a Judgment awarding Plaintiff, the California Class, and the California Subclass compensatory damages and punitive damages, where available, in an amount to be proven at trial;

F.  a Judgment awarding Plaintiff and the California Class statutory damages, where available, in an amount to be proven at trial;

G.  Pre-judgment and post-judgment interest at the maximum allowable rate;

H.  an Order awarding Plaintiff, the California Class, and the California Subclass reasonable litigation expenses, costs, and attorneys' fees;

I.  an Order awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff, the California Class, and the California Subclass; and

J.  an Order awarding such other and further relief as the Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all claims and issues so triable.

Dated: June 14, 2021

SCHUBERT JONCKHEER & KOLBE LLP

*/s/ Alexandra K. Green*

ROBERT C. SCHUBERT (S.B.N. 62684)
NOAH M. SCHUBERT (S.B.N. 278696)
ALEXANDRA K. GREEN (S.B.N. 333271)
**SCHUBERT JONCKHEER & KOLBE LLP**
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone:     (415) 788-4220
Facsimile:     (415) 788-0161
E-mail:         rschubert@sjk.law
                    nschubert@sjk.law
                    agreen@sjk.law

*Counsel for Plaintiff*

Schubert Jonckheer & Kolbe LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220