UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGETTE LOWE,<br><br>        Plaintiff,<br><br>        v.<br><br>WALGREENS BOOTS ALLIANCE, INC., et al.,<br><br>        Defendants. | Case No. 21-cv-02852-SK<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Regarding Docket No. 21 |

On April 20, 2021, Plaintiff Brigette Lowe ("Plaintiff") filed a putative class action complaint. (Dkt. 1.) Plaintiff filed a First Amended Complaint ("FAC") on June 14, 2021. (Dkt. 14.) Defendants Walgreens Boots Alliance, Inc. and Walgreen Co. ("Defendants") moved to dismiss the FAC on July 12, 2021. (Dkt. 21.) Defendants filed an initial request for judicial notice alongside their motion to dismiss and a second request for judicial notice alongside their reply. (Dkt. 22, 38.) Plaintiff opposed the motion to dismiss (Dkt. 33) and filed her own request for judicial notice (Dkt. 35). Plaintiff further opposed Defendants' initial request for judicial notice. (Dkt. 34.)

The Court held a hearing on the motion to dismiss the FAC on September 13, 2021. (Dkt. 42.) Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. (Dkts. 7, 12.) Having considered the submissions of the parties, the record in the case, and the relevant legal authorities, and having had the benefit of oral argument, the Court HEREBY GRANTS Defendants' motion to dismiss and GRANTS both of Defendants' requests for judicial notice and Plaintiff's request for judicial notice, for the reasons set forth below.

**BACKGROUND**

Plaintiff is a resident of Vallejo, California. (Dkt. 14 ¶ 16.) Plaintiff alleges that at the end

of 2019, she purchased a single box of Walgreens' Minoxidil Topical Aerosol 5% (Foam) Hair Regrowth Treatment for Women ("Women's Product") at a Walgreens retail pharmacy location near her home. (*Id.* ¶¶ 1, 2, 16.) Plaintiff alleges that Defendants also sell a Minoxidil Topical Aerosol 5% (Foam) Hair Regrowth Treatment for Men ("Men's Product") (collectively with Women's Product, "the Products"). (*Id.* ¶ 9.) Plaintiff alleges that

> Minoxidil, the active ingredient in the Products, is a U.S. Food and Drug Administration ("FDA")- approved over-the-counter topical medication for androgenetic alopecia marketed and sold to both men and women. […] Minoxidil is available as a 5% solution to be applied twice daily for men, 2% solution applied twice daily for women, and 5% foam applied twice daily for men (FDA approved in 2006) and once daily for women (FDA approved in 2014).

(*Id.* ¶ 10) (internal quotation marks and citation omitted). Plaintiff contends that, "[d]espite their distinct packaging, the Women's Product and the Men's Product contain the same active ingredient and formulation of Minoxidil." (*Id.* ¶ 13.) "Even though there is no difference in formulation between the Products, Walgreens markets and sells the Women's Product to consumers at a substantially higher price than the Men's Product." (*Id.*) As of March 25, 2021, Plaintiff alleges that the Women's Product cost nearly 1.5 times what the Men's Product cost, for identical product. (*Id.* ¶¶ 13, 14.) This price differential amounts to a "pink tax" on female consumers, according to Plaintiff. (*Id.* ¶ 3.)

Plaintiff further maintains that Defendants' advertisements, marketing representations, and labeling of the Products are misleading and likely to deceive a reasonable consumer into believing that the Women's Product is unique or specially formulated to make it appropriate for women, as opposed to the cheaper but substantively identical Men's Product. (*Id.* ¶ 11.) The Women's Product is allegedly marketed toward female consumers specifically, with more stereotypically feminine purple packaging. (*Id.* ¶ 32.) It also bears the label "Foam for Women." (*Id.*) The Men's Product comes in blue packaging and is labelled both "For Men" and "NOT FOR USE BY WOMEN." (*Id.* ¶¶ 32, 35.) Viewed in combination, Plaintiff alleges that the packaging of the Products suggests that the Women's Product is particularly for women, despite the fact that the products contain the same active ingredient, formulated the same way. (*Id.* ¶¶ 36, 37, 38.) Plaintiff acknowledges that the packaging of the Products provides different dosage instructions

2

for women versus for men; the back of the Women's Product instructs users to apply half a capful once daily, while the back of the Men's Product instructs users to apply half a capful twice daily. (*Id.* ¶¶ 41, 42.) As of March 25, 2021, the Women's Product sold for $9.48 per ounce, while the Men's Product sold for $6.16 per ounce. (*Id.* ¶ 45.)

On behalf of a putative class and on her own behalf, Plaintiff brings claims for violation of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.* ("Unruh Act"); violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"); violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"); violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"). (*Id.* ¶¶ 71-116.) Plaintiff seeks declaratory and injunctive relief, restitution, compensatory and punitive damages, statutory damages, interest, costs, and fees. (*Id.*)

Defendants argue that federal law preempts Plaintiff's claims under the FAL, CLRA, and UCL. (Dkt. 21.) Under the Federal Food, Drug, and Cosmetic Act, manufacturers of a generic drug may skip the independent certification of that drug and piggyback on the corresponding brand name drug's certification, provided that, among other things, the label on the generic drug is identical to that of the brand name drug. (*Id.*) Here, the corresponding brand name drug is Rogaine, and Defendants argue that Walgreens' generic Products must be labeled identically to Rogaine's products under federal law. (*Id.*) In support of this proposition, Defendants proffer for judicial notice the letters from the FDA for approval and labelling issued for Rogaine products. (Dkt. 22 (Exs. A, B, C).) In addition, Defendants request judicial notice of the class action complaint in another relevant case and legislative history documents related to the Unruh Act. (Dkt. 38( Exs. A, B, C, D).) Defendants further contend that Plaintiff has failed to state a claim under the Unruh Act, because that statute does not apply to consumer goods. (Dkt. 21.)

Plaintiff rejoins that prior case law in the context of labeling claims has relied on failure to warn or design defect theories for its analysis of preemption. (Dkt. 33.) Plaintiff argues that her false advertising claims are unique and that considering them would further the FDA's objective of protecting consumers. (*Id.*) Plaintiff further contends that the Unruh Act does apply to goods where gender-based price discrimination is at issue. (*Id.*) In support of her opposition, Plaintiff

3

1  requests judicial notice of three legislative bill analysis documents related to the Unruh Act. (Dkt.
2  35 (Exs. A, B, C).)

3  For the sake of concision, the Court does not restate the parties' arguments regarding
4  whether Plaintiff has standing to seek injunctive relief, whether a reasonable consumer would have
5  been deceived by the packaging at issue, and whether Plaintiff has adequately alleged fraudulent
6  omission, as none of those arguments is dispositive.

**DISCUSSION**

**A.     Legal Standards.**

Defendants bring their motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) authorizes a motion to dismiss where the pleadings fail to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Rather, a plaintiff must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

4

**B.    Analysis.**

**1.    Requests for Judicial Notice.**

The Court takes judicial notice of Defendants' and Plaintiff's factual submissions in support of their motion to dismiss. (Dkts. 22, 34, 35.) When weighing a motion to dismiss, courts may consider facts subject to judicial notice. *Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987). Upon request of the parties and with sufficient information provided, a court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are generally known within the court's territorial jurisdiction or because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. F.R.E. 201. In short, facts subject to judicial notice are those that "only an unreasonable person would insist on disputing." *Botelho v. U.S. Bank, N.A.*, 692 F. Supp. 2d 1174, 1177 (N.D. Cal. 2010) (quoting *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006) (internal quotation omitted).

Here, the parties submit FDA documents, legislative documents, an a publicly-filed complaint. None of these documents are subject to reasonable dispute. Plaintiff objects to Defendants' request that the Court take notice of the FDA's approval letters for Rogaine on the basis that Defendants offer it to demonstrate the truth of Defendants' assertion that the packaging of their Women's Product and Rogaine for Women is identical. (Dkt. 34.) The Court disagrees. The documents merely tend establish the facts regarding the type of label that the FDA approved for Rogaine products, rather than any conclusion about those labels relative to the labels on Defendants' Women's Product. Defendants do not object to Plaintiff's request for judicial notice. Accordingly, the Court GRANTS both Defendants' and Plaintiff's requests for judicial notice.

**2.    Motion to Dismiss.**

**i.    Preemption.**

Federal law preempts Plaintiff's claims under the FAL, CLRA, and UCL. The Supremacy Clause of the United States Constitution establishes that federal law is "the supreme Law of the land; […] any Thing in the Constitution or Law of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. Derived from the Supremacy Clause, preemption doctrine mandates

that any state law which interferes with or is contrary to federal law must yield or is without effect. *See Felder v. Casey*, 487 U.S. 131, 138 (1988) (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962)); *Maryland v. Louisiana*, 451 U.S. 725, 728 (1981). As such, "a state statute is void to the extent it conflicts with a federal statute – if, for example, 'compliance with both federal and state regulations is a physical impossibility'" or where state law stands as an obstacle to full execution of the purposes of Congress in passing the federal statute. *Maryland*, 451 U.S. at 728 (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963)). "Even in the absence of an express pre-emption provision, the Court has found state law to be impliedly pre-empted where it is 'impossible for a private party to comply with both state and federal requirements.'" *Mutual Pharmaceutical Co., Inc. v. Bartlett*, 570 U.S. 472, 480 (2013) (citing *Florida Lime*, 373 U.S. at 142-43).

"Under the 1962 Drug Amendments to the Federal Food, Drug, and Cosmetic Act, 76 Stat. 780, 21 U.S.C. § 301 *et seq.*, a manufacturer seeking federal approval to market a new drug must prove that it is safe and effective and that the proposed label is accurate and adequate. *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 612 (2011). "The FDA's premarket approval of a new drug application includes the approval of the exact text in the proposed label." *Wyeth v. Levine*, 555 U.S. 555, 568 (2009) (citing 21 U.S.C. § 355; 21 C.F.R. § 314.105(b)). Generic versions of drugs already subject to the new drug application process may "gain FDA approval simply by showing equivalence to a reference listed drug that has already been approved by the FDA." *Mensing*, 564 U.S. at 612 (citing 21 U.S.C. § 355(j)(2)(A)). "A generic drug application must also 'show that the [safety and efficacy] labeling proposed … is the same as the labeling approved for the [brand-name] drug.'" *Id.* at 612-13 (citing 21 U.S.C. § 355(j)(2)(A)(v)). To gain and keep generic drug approval, a manufacturer "is responsible for ensuring that its warning label is the same as the brand name's [label]." *Id.* at 613. "The FDA […] interprets its regulations to require that the warning labels of a brand-name drug and its generic copy must always be the same – thus, generic drug manufacturers have an ongoing federal duty of 'sameness'." *Id.* (citing 57 Fed. Reg. 17961 (1992)). The Supreme Court has held that federal law preempts state laws requiring changes to the labeling of generic drugs because those state laws conflict with the duty of sameness imposed

by the FDA. *See Mensing*, 564 U.S. at 619-24; *Bartlett*, 570 U.S. at 486 ("federal law prevents generic drug manufacturers from changing their labels," preempting state law to the contrary).

Here, Plaintiff argues that Defendants' labels are misleading within the meaning of California's FAL, CLRA, and UCL. The Products at issue, however, are generic versions of brand-name drug Rogaine. As such, the Products' labels must exactly mirror the approved text of the Rogaine labels in order to qualify them for approval as a generic drug, and those labels must remain the same under the ongoing duty of sameness the FDA imposes on generic drug manufacturers. *Mensing*, 564 U.S. at 613. The FDA's publicly available approval letters for Rogaine show the same text that appears on Rogaine boxes, which in turn is mirrored on the outside of Defendants' boxes selling their generic Products. *Compare* Dkt. 22 (Exs. A-E) *with* Dkt. 14 (page 8). Federal law regarding labeling thus preempts Plaintiff's claims that Defendants' labels must be different to comply with state law duties imposed by the FAL, CLRA, and UCL. Plaintiff's argument that *Mensing* and *Bartlett* are inapposite because different state laws – governing failure to warn and design defect – were at issue in those cases is unavailing. Where simultaneous compliance with federal and state law is impossible, federal law reigns supreme, regardless of the nature of the state statue at issue.

### ii. Unruh Act.

Plaintiff fails to state a claim under the Unruh Act because that statute does not apply to consumer goods. The Unruh Act provides that

> [a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal *accommodations, advantages, facilities, privileges, or services* in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b) (emphasis added). The plain language of the statute prohibits discrimination in "accommodations, advantages, facilities, privileges, or services." *See Lopez v. Regents of Univ. of California*, 5 F. Supp. 3d 1106, 1118 (N.D. Cal. 2013) ("It is a fundamental canon of statutory interpretation that where the statutory text is plain and unambiguous, a court must apply the statute according to its terms" and "when a statute designates certain persons,

things, or manners of operation, all omissions should be understood as exclusions.") (internal citations and quotation marks omitted). The statutory history of the Unruh Act supports the view that its purview does not encompass goods. *See* Dkt. 22 (Ex. F). That history reveals that the California legislature originally passed a version of the Unruh Act that applied to both goods and services, that the bill was vetoed, and that the version finally enacted only applied to services. (*Id.*) Thus, both the plain language and the legislative history of the Unruh Act reveal that the Unruh Act does not apply to goods. Plaintiff argues that the Unruh Act does apply to discriminatory pricing schemes, citing *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 30 (1985), a case where a male customer was not offered a discount a nightclub and a car wash on "Ladies Night" and "Ladies Day," respectively. However, that case involved access to a business establishment, rather than differential pricing of goods, making it inapposite here. Plaintiff has failed to state a claim for relief under the Unruh Act.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's FAC is GRANTED in its entirety. The Clerk of Court is directed to close the file.

**IT IS SO ORDERED**.

Dated: September 23, 2021



SALLIE KIM
United States Magistrate Judge

8